UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DAVID BROWN,

               Plaintiff,                       Case No. 1:12-cv-873

v.                                       Honorable Janet T. Neff

JOHN PRELESNIK et al.,

               Defendants.

_____/

**OPINION**

This is a civil rights action brought by a state prisoner. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint[1] against Defendants Norwood, Huss, Stoddard, Gilkey, Murry, Czop, Smith, Jackson, Lindy, Lewis, Moull,

_____

[1]After filing his original complaint, Plaintiff filed a motion to amend his complaint (docket #8), together with a proposed amended complaint (docket #8-1). Because Plaintiff may amend his complaint once as a matter of course, his motion will be granted and the Court will refer to the amended complaint for purposes of this Opinion.

Ault, and Hair. The Court will serve the amended complaint, in part, against Defendants Michigan Department of Corrections, Heyns, Prelesnik, LeBarre, Foi, Shoard, Lahr, Kaber, and Wilson.

**Factual Allegations**

Plaintiff David Brown is incarcerated at the Ionia Maximum Correctional Facility (ICF), where the events giving rise to the complaint occurred. In his amended complaint, he sues the Michigan Department of Corrections (MDOC) and MDOC Director Daniel Heyns, as well as the following employees of ICF: Warden John Prelesnik; Acting Warden Cathy Stoddard; Deputy Wardens Nannette Norwood and Erica Huss; Resident Unit Manager (RUM) Bo Gilkey (also spelled "Gilky"); Dr. Richard Czop; Healthcare Manager Jody LeBarre; Hearings Investigator Parrish Smith; Hearings Officer Z. Jackson; Resident Unit Officers (RUOs) "Unknown" Hair and "Unknown" Moull; Corrections Officers W. Lahr (also spelled "Lahar"), L. Lindy, and R. Wilson; Sergeants "Unknown" Lewis, C. Murry, and P. Shoard; Mailroom Personnel "Unknown" Kaber; Classification Director C. Foi; and Case Manager A. Ault.

According to the amended complaint, Plaintiff is blind in his left eye and partially blind in his right eye due to keratoconus, a degenerative eye condition. Plaintiff was housed at ICF from September 2010 to August 2011, but he was transferred to another prison facility to accommodate unspecified "medical accommodational needs." (Am. Compl, docket #8-1, Page ID#62.) On March 20, 2012, however, Plaintiff was transferred back to ICF. Attached to Plaintiff's complaint is a list of special accommodations ordered for him by MDOC personnel prior to March 20, 2012, and in effect as of that date. (Ex. 1, docket #1-1, Page ID#13.) The accommodations on the list include: a barrier-free room, a bottom bunk, use of a ramp, contact lenses, an "LCS Player,"

books on cassette, an attendant to assist with movement around the facility, assistance with reading and writing, and a handicap table. (*Id.*)

Plaintiff contends that ICF lacks adequate accommodations or resources for visually-impaired prisoners, such as: ramps, barrier-free housing, handicap-accessible showers, and adequate capacity or space to provide reading and writing assistance. (Am. Compl., docket #8-1, Page ID##62-63.) There is also no "dayroom" for recreational purposes, and during the winter Plaintiff is "excluded" from "[r]ecreation" because the snow is a safety hazard for him and he is not provided an escort to walk him around outside. (*Id.* at Page ID#64.) He further contends that, as a result of Defendants' failure to provide the "necessities needed to house the legally blind," he fell in the showers on November 28, 2012, and fell down the stairs on December 9, 2012, injuring his lower back and neck. (*Id.*) In addition, Plaintiff complains that the medical facilities at ICF are inadequate because the optometrist at ICF cannot provide nerve-fiber testing or glaucoma testing (Am. Compl., Page ID#65), though Plaintiff acknowledges that he was given such testing by an off-site provider in October 2012. (*Id.* at Page ID#72.)

Plaintiff further contends that he was denied a school or work assignment at ICF from September 2010 to August 2011, and was excluded from the gym program from September 2010 to November 2012, in each case, solely because of his disability. (*Id.* at Page ID##64, 66.)

Plaintiff also alleges a variety of incidents in which certain Defendants have denied him one or more of the following: access to the showers, the law library, or the prison kiosk; assistance with cleaning his cell; reading and writing assistance; books on cassette; and the use of a walking cane. Those incidents are discussed in further detail, *infra*, with respect to the Defendants involved therein.

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, asserting that Defendants have violated his rights under the First, Fifth, Eighth, and Fourteenth Amendments to the Constitution. He also brings this action under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12132 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794, claiming that Defendants have excluded him from services or programs at ICF and/or have discriminated or retaliated against him on account of his disability. Plaintiff expressly sues Defendants Heyns and Prelesnik in both their official and individual capacities, and the remaining non-entity Defendants in their individual capacities only. As relief, Plaintiff seeks damages and an injunction.

## Analysis

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more

than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

I. <u>Section 1983</u>

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A. MDOC**

The MDOC is immune from suit under § 1983. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In

numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Consequently, Plaintiff's § 1983 claims against the MDOC must be dismissed.

### B. MDOC Director Heyns

Plaintiff alleges that Defendant Heyns was generally aware of Plaintiff's conditions at ICF and the actions of Heyns' subordinates, but failed to correct them. Heyns was informed in 2010, through the grievance process, that Plaintiff had been denied access to "services[,] activities and programs" at ICF. (Am. Compl., Page ID#70.) Also, Heyns was "made aware" in 2010, 2011, and 2012 that ICF wardens had failed to make services, activities and programs "readily accessible to the disabled." (*Id.*) Plaintiff also informed Heyns that he was denied access to participation work and school programs at ICF and that ICF lacked barrier-free housing, ramps and elevators, and "adequate" showers for the disabled. (*Id.*) Thus, Heyns was "on notice" that the failure to provide showers with guardrails caused Plaintiff to injure his lower back and neck. (*Id.*) Plaintiff claims that Heyns failed to search the "(BHCS) med. grid" to see where Plaintiff's medical needs could be met, and was deliberately indifferent to the "widespread abuse" suffered by Plaintiff "through optometrist progress on-site and off-site since 2006." (*Id.*) Finally, Heyns allegedly denied Plaintiff unspecified "injunctive relief from ICF" and the right to "earn an income and reduction in disciplinary points" like other able-bodied prisoners. (*Id.*)

Where a prisoner's claim is based solely on a defendant's supervisory authority over others, and a mere failure to act, he does not state a § 1983 claim. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff fails to adequately allege that Heyns actively engaged in any unconstitutional conduct. Plaintiff's contention that Heyns was generally aware of Plaintiff's conditions, and the conduct of subordinates who were responsible for them, is not sufficient to state a claim.

Plaintiff also contends that Heyns somehow "denied" Plaintiff the opportunity to work, and that Heyns was deliberately indifferent to unspecified problems with Plaintiff's optometry care, but the latter allegations are far too vague to support a plausible claim against Heyns. *See Iqbal*, 556 U.S. at 679 (requiring allegations that permit the Court to infer more than the "mere

possibility" of misconduct).   Consequently, Plaintiff's § 1983 action against Heyns will be dismissed.

### C.  Wardens Prelesnik, Norwood, Huss, Stoddard

Plaintiff alleges that Defendants Prelesnik, Norwood, Huss, and Stoddard were notified of Plaintiff's disability by his medical accommodations sheet.  When Plaintiff arrived at ICF in March 2012, he informed Prelesnik, Norwood, Huss, and Gilkey that he was previously incarcerated at ICF in 2011, but that he had been transferred to another facility to accommodate his medical condition.   Later, he informed them that he had been excluded from a work/school assignment, that he had been denied reading/writing assistance, that he fell in the shower on November 28, 2012, and that he fell down the stairs on December 9, 2012, causing injury to his back and neck.  As with Defendant Heyns, Plaintiff cannot assert a § 1983 claim against  Defendants Prelesnik, Norwood, Huss, or Stoddard, solely because of their supervisory authority over other officers.

In addition, Plaintiff does not state a § 1983 claim against them merely because they were generally aware of his conditions, or of the fact that he injured himself.  The Eighth Amendment prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  It is concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981) (citation omitted).  However, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.  Thus, for instance, placement in segregation generally does

not constitute cruel and unusual punishment because it is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced an objectively serious risk of harm, and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff has not alleged any circumstances in which Defendants Prelesnik, Norwood, Huss, or Stoddard were deliberately indifferent to a serious risk of harm to Plaintiff. He merely alleges that they were generally aware of his medical accommodations and the conditions at ICF, and that they later learned that he had been denied assistance with reading and writing, that he had not received a work/school assignment, and that he had fallen in the prison on several occasions. Plaintiff does not allege that Defendants were directly involved in overseeing or controlling Plaintiff's conditions, or that they deliberately disregarded a specific, serious need. Consequently,

the foregoing allegations are not sufficient to state an Eighth Amendment claim. As a result, Plaintiff fails to state a § 1983 claim against Defendants Prelesnik, Norwood and Huss.

With respect to Defendant Stoddard, Plaintiff further alleges that she was "made aware" that Plaintiff was excluded from unspecified "programs[,] services and activities" at ICF, and that her subordinates denied Plaintiff reading and writing assistance in October and November 2012. (Am. Compl., Page ID#67.) In addition, she was "aware" that Defendant Shoard assigned Plaintiff to an unsafe job in October 2012, that Plaintiff had been placed in segregation for 32 days from May 28 to July 6, 2012, without handicap-accessible facilities or access to the recreation yard, and that officers threatened to throw Plaintiff down the stairs after he filed a grievance. (*Id.*) The foregoing allegations are deficient for the same reasons stated, *supra*, with respect to the allegations against Defendants Prelesnik, Norwood, and Huss. They do not permit a reasonable inference that Stoddard deliberately disregarded a specific, serious risk of harm to Plaintiff or otherwise actively engaged in any unconstitutional behavior; they merely indicate that she was notified of conduct by her subordinates and, presumably, failed to act.

Plaintiff also contends that Stoddard retaliated against Plaintiff and disregarded his serious medical needs when she reviewed his file but denied him a transfer to another facility or to another security classification. First, "'an inmate possesses no inherent constitutional right to placement in any particular prison or in any particular section within the prison system.'" *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (quoting *Williams v. Bass*, 63 F.3d 483, 485 (6th Cir. 1995)). Thus, a denial of transfer to another prison or to another security classification does not, without more, violate Plaintiff's constitutional rights.

On the other hand, retaliation based upon a prisoner's exercise of his or her constitutional rights does violate the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Here, Plaintiff does not identify the protected conduct motivating Stoddard's alleged refusal to transfer him to another facility. Thus, his claim that she retaliated against him is wholly conclusory.

Finally, to the extent Plaintiff asserts that Stoddard disregarded Plaintiff's medical needs, he does not state a claim. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Like a conditions-of-confinement claim, a claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If, however, the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay

in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001). The subjective component requires an inmate to show that prison officials have been deliberately indifferent to a substantial risk of serious harm. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834).

Plaintiff does not identify the serious medical need, or other risk to Plaintiff's health or safety, that Stoddard allegedly disregarded. Plaintiff apparently refers to his need for optometry care, which he asserts was not available at ICF. However, Plaintiff acknowledges that he received care by an optometrist at an off-site location. It is not at all clear from the complaint why that arrangement was not adequate to address his medical needs, much less that Stoddard's decision not to transfer Plaintiff to another facility subjected him to a substantial risk of harm. Consequently, for all the foregoing reasons, Plaintiff does not state a § 1983 claim against Defendant Stoddard.

### D. RUM Gilkey

Plaintiff asserts that Defendant Gilkey was the manager of Plaintiff's housing unit as of March 20, 2012, and he failed to provide unspecified "accommodations" for Plaintiff. (Am. Compl., docket #8-1, Page ID#65.) Defendant Gilkey was aware that the housing units in ICF do not provide unspecified "necessities needed to house the legally blind." (*Id.*) In addition, Gilkey was "made aware" in November 2012 that Plaintiff had been denied reading and writing assistance while he was housed in unit 4. (*Id.*)

Plaintiff's allegations are not sufficient to state an Eighth Amendment claim against Gilkey. Plaintiff does not allege that Gilkey was aware of a serious risk of harm to Plaintiff's health or safety as a result of a failure to provide unspecified accommodations or necessities for Plaintiff's condition, much less that Gilkey acted with deliberate indifference to such a risk. Reading and

writing assistance is not a necessity on the order of food, medical care, or sanitation, and a denial of such assistance does not subject a prisoner to a risk of harm or to conditions "intolerable for prison confinement." *Cf. Rhodes*, 452 U.S. at 348.

Furthermore, the Court notes that Plaintiff does not allege that the lack of reading and writing assistance implicated any of his other constitutional rights, such as his right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). Consequently, Plaintiff does not state a § 1983 claim against Gilkey.

### E. Sgt. Murry

Plaintiff alleges that Sergeant Murry requested, and Healthcare Manager LeBarre authorized, the removal of Plaintiff's prescribed walking cane in October 2012. Plaintiff apparently needed the cane to safely navigate the prison, but he acknowledges that he was provided a walking escort for that purpose. Plaintiff asserts that he could fall if someone pushed him, or he could slip or run into objects, even with an escort; however, none of the facts alleged permit a reasonable inference that any risk of harm to Plaintiff was substantial, as would be necessary to state an Eighth Amendment claim. The Eighth Amendment does not require prison officials to ensure that prisoners are safe from every *possible* risk of harm, no matter how small. It only requires them to take steps to prevent "substantial" or "excessive" risks. *See Farmer*, 511 U.S. at 834, 837. The Court notes that Plaintiff allegedly fell down the stairs on one occasion, and fell in the showers on other occasions, but Plaintiff provides no details about those incidents to indicate why they occurred or if the lack of a walking cane was a contributing factor. Nor does Plaintiff allege facts from which to infer that Murry was aware of the risks asserted by Plaintiff and deliberately ignored them.

Consequently, Plaintiff's assertion that Murry deprived Plaintiff of his walking cane does not state an Eighth Amendment claim.

Plaintiff also asserts that, on an unspecified date, Officer Murry was "made aware" that Officer Lindy denied Plaintiff assistance with cleaning his cell, but Murry failed to stop him. (Am. Compl., Page ID#71.)  Plaintiff does not indicate when, or for how long, Lindy allegedly denied Plaintiff such assistance; however, inmate Vincent Emery asserts in an affidavit attached to the complaint that Lindy denied Plaintiff such assistance on October 17, 2011.  (Emery Aff., docket #1-1, Page ID#15.)

Generally, allegations about temporary inconveniences, *e.g.*, being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that a prisoner's conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency.  *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)).  Plaintiff contends that the denial of cleaning assistance "would subject him to inhumane living conditions," but he does not allege any facts showing that he was in fact subject to such conditions, much less that Officer Murry was deliberately indifferent to them.  (Am. Compl., Page ID#71.)  Consequently, Plaintiff's allegations are not sufficient to state an Eighth Amendment claim against Murry.

In addition, Officers Murry and Lindy allegedly threatened to let a mentally-ill prisoner read Plaintiff's personal mail, but Plaintiff refused to let them do so.  Plaintiff does not allege that they acted on their threat.  Verbal harassment and abuse like the foregoing does not rise

to constitutional dimensions. *See Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights.").

Also, on May 28, 2010, Plaintiff was placed in segregation as a result of an allegedly fabricated assault charge, though the victim of the assault told Defendants Lindy and Murry that Plaintiff was not responsible. Plaintiff, however, does not allege that either Lindy or Murry was responsible for fabricating the assault charge or for placing Plaintiff in segregation. Their failure to act on the inmate's statement does not state a claim. Consequently, Plaintiff does not state a claim against Murry.

### F. Healthcare Manager LeBarre

Plaintiff asserts that Defendant LeBarre was aware of Plaintiff's medical condition, the accommodations that he required, and the lack of handicap-accessible facilities in Plaintiff's housing unit. In October 2012, Plaintiff was given specialized contact lenses by an optometrist and was told to wear them for thirty days until his next appointment. He was also told to contact

healthcare personnel at ICF if he experienced any pain or discomfort from the lenses. Sometime thereafter, Plaintiff informed LeBarre that the lenses were too tight and were causing discomfort. Plaintiff also informed LeBarre that Plaintiff was supposed to return to see his optometrist within thirty days after his appointment. By December 2012, Plaintiff had not been scheduled for a follow-up appointment with his optometrist. Plaintiff saw a nurse on December 4, 2012, regarding a scratch on his eyeball, but he was informed that he would have to wait for another appointment with an optometrist. Plaintiff asserts that LeBarre failed to schedule his follow-up appointment, though she was aware of his pain and discomfort. The Court concludes that Plaintiff's allegations are sufficient to warrant service of the amended complaint on Defendant LeBarre.

### G. Dr. Czop

Plaintiff contends that Dr. Czop was aware of Plaintiff's visual impairment and his medical accommodations. Also, Czop was aware that ICF does not provide "services[,] activities and programs" for the disabled. (Am. Compl., Page ID#66.) Czop allegedly discussed with Plaintiff unspecified "dangers that being housed at ICF posed." (*Id.*) In addition, Czop examined Plaintiff and determined that Plaintiff could not be treated at ICF because Czop is not trained in optometry; however, Czop allegedly failed to search the "BHCS med. grid" to see where Plaintiff's medical needs could be met. (*Id.*)

Plaintiff arguably asserts two possible Eighth Amendment claims against Defendant Czop: one related to Plaintiff's conditions of confinement and the other related to Plaintiff's medical care. With respect to Plaintiff's conditions of confinement, Plaintiff fails to state a claim because he does not allege that Czop was deliberately indifferent to a substantial risk of harm. Even if the

housing conditions at ICF were not ideal for Plaintiff's safety, Plaintiff fails to identify a specific, significant risk of harm from those conditions that Czop allegedly disregarded.

Likewise, Plaintiff's allegations fall far short of showing that Czop was deliberately indifferent to a serious medical need. Plaintiff complains that Dr. Czop was not qualified to provide optometry care, but Plaintiff acknowledges that he received such care by an off-site specialist. (*See* Am. Compl., docket #8-1, Page ID#72.) It is not at all clear why that arrangement was inadequate to address Plaintiff's medical needs. Plaintiff has apparently experienced delays in obtaining an appointment with an optometrist, but Plaintiff does not allege that Dr. Czop was responsible for those delays, or that Czop was aware of and deliberately disregarded a serious need for care when it arose. Furthermore, where, as here, "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976); *see also Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

In sum, Plaintiff's allegations do not show that Czop deliberately disregarded a significant risk with respect to Plaintiff's health or safety. Thus, Plaintiff does not state a claim against Defendant Czop.

## H. Classification Director Foi, Sergeant Shoard

Defendant Foi allegedly refused to classify Plaintiff to a work or school assignment while Plaintiff was confined at ICF from September 2010 until August 2011, solely because of Plaintiff's disability. In an affidavit attached to the complaint, inmate Troy Johnson asserts that he sent "over a dozen" kites to the classification director concerning Plaintiff's lack of a school or work

assignment, but that Plaintiff "was denied classification due to [h]is disability according to staff[,] [Plaintiff] is unable to work and [ICF] does[]not provide school for the blind." (Johnson Aff., docket #1-1, Page ID#10.) Johnson further asserts that he has assisted Plaintiff with his reading and writing because ICF does not provide that sort of assistance.

In November 2012, Foi allegedly assigned Plaintiff to a work detail for three days, after Plaintiff filed several grievances asserting his right to be employed like non-disabled prisoners. However, the job to which Plaintiff was assigned was unusually difficult and dangerous for him, because it involved cleaning an open shower area with running water, scrub brushes, and buckets on the floor. Plaintiff asserts that he needs assistance to clean his own cell, and that he has fallen in the prison showers on at least one occasion. Plaintiff alleges that Sgt. Shoard conspired with Defendant Foi, because Shoard hired Plaintiff for the shower-cleaning detail.

Plaintiff's allegations are sufficient to warrant service of the amended complaint on Defendants Foi and Shoard.

## I. Hearings Investigator Smith

Defendant Smith allegedly hindered Plaintiff's access to the courts by failing to provide a "hearing package" from May 28 to July 6, 2012. (Am. Compl., Page ID#67.) The package consists of "witness statements on evidence" from a misconduct hearing. (*Id.*) Plaintiff asserts that, because he did not receive the package on time, he was unable to appeal the misconduct conviction.

It is clearly established that prisoners have a constitutionally protected right of access to the courts under the First and Fourteenth Amendments. *See Lewis v. Casey*, 518 U.S. 343, 354 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

Prison officials have a two-fold duty to protect a prisoner's right of access to the courts. *McFarland v. Luttrell*, No. 94-6231, 1995 WL 150511, at *3 (6th Cir. Apr. 5, 1995). First, they must provide affirmative assistance in the preparation of legal papers in cases involving constitutional rights, in particular criminal and habeas corpus cases, as well as other civil rights actions relating to the prisoner's incarceration. *Id.* (citing *Bounds*, 430 U.S. at 824-28). Second, the right of access to the courts prohibits prison officials from erecting any barriers that may impede the inmate's accessibility to the courts. *Id.* (citing *Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992)); *see also Bounds*, 430 U.S. at 822 (citing *Ex parte Hull*, 312 U.S. 546, 549 (1941)).

In order to state a viable claim for interference with access to the courts, however, a plaintiff must show actual injury to pending or contemplated litigation. *See Lewis*, 518 U.S. at 349; *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. To adequately plead a claim, "the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). Where, as here, the plaintiff asserts that the defendant's actions have prevented him from pursuing an action, "the complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." *Id.* at 417-18.

Plaintiff has not satisfied the foregoing requirements for pleading an access-to-the-courts claim. He fails to identify either the underlying claim for his appeal from the misconduct conviction or an available remedy. Thus, he does not state an access-to-the-courts claim.

Plaintiff also asserts that Smith's actions were irrational and discriminatory, and were based solely on Plaintiff's disability; however, Plaintiff offers no facts to support that conclusion. Consequently, for all the foregoing reasons, Plaintiff does not state a § 1983 claim against Smith.

### J.  Hearings Officer Jackson

Hearings Officer Jackson allegedly violated Plaintiff's rights when he determined that Plaintiff should be confined in segregation as a result of a misconduct rather than confined in his cell without privileges.  Jackson was aware that the ICF segregation unit does not provide barrier-free housing, handicap-accessible showers, or ramps.  In addition, as a result of his placement in segregation, Plaintiff was denied reading and writing assistance.

As a hearings officer, Jackson's duties are set forth at MICH. COMP. LAWS § 791.251 through § 791.255.  Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections.  *See* MICH. COMP. LAWS § 791.251(e)(6).  Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed.  *See* MICH. COMP. LAWS § 791.252(k).  There are provisions for rehearings, *see* MICH. COMP. LAWS § 791.254, as well as for judicial review in the Michigan courts.  *See* MICH. COMP. LAWS § 791.255(2).  Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges.  *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988).  As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers.  *Id.*; *and see Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386

U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights).

Defendant Jackson's decision to punish Plaintiff with segregation rather than a loss-of-privileges sanction was an action taken in his capacity as a hearing officer. Consequently, he is immune from suit for Plaintiff's § 1983 claims.

## K.  Officer Lahr

In October 2010, Officer Lahr denied Plaintiff access to the chow hall, telling Plaintiff "You can eat in your cell with your blind ass." (Am. Compl., Page ID#68.) Plaintiff told Lahr that he would file a grievance, and Lahr responded by placing Plaintiff in segregation. When Plaintiff was released from segregation later that month, Lahr sent Plaintiff back to segregation, telling him, "I don't want your blind grievance writing ass around me." (*Id.*) In November 2010, Lahr sent Plaintiff to segregation a third time, threatening to "kick [Plaintiff's] face in" and telling Plaintiff, "I just don't like your blind ass . . . ." (*Id.* at Page ID##68-69.) Plaintiff's allegations are sufficient to warrant service of the amended complaint on Defendant Lahr.

## L.  Mailroom Employee Kaber

Defendant Kaber, a prison mailroom employee, allegedly denied Plaintiff access to books, magazines, and catalogs from the "MCB" program[2] as of March 20, 2012, though Plaintiff had been receiving books on cassette since 2008. (Am. Compl., Page ID#69.) Construing the amended complaint generously, as it must, the Court concludes that Plaintiff's allegations are sufficient to warrant service on Defendant Kaber.

---

[2]MCB refers to the Michigan Commission for the Blind, which is now called the Bureau of Services for Blind Persons. It maintains a Braille and "Talking Book" library for those with physical impairments who cannot read standard print materials. *See* http://www.michigan.gov/lara/0,4601,7-154-61256_28313_54234-225688--,00.html (visited Feb. 20, 2013).

**M. Officer Wilson**

Defendant Wilson allegedly denied Plaintiff access to the showers and the prison kiosk on November 7 and 22, 2012, and December 3 and 8, 2012. On December 3 and 4, 2012, Wilson denied Plaintiff access to the chow hall. In addition, Wilson gave Plaintiff access to the kiosk for 45 minutes in a week while other prisoners are given 75 minutes per week. According to Plaintiff, Wilson "feels that [Plaintiff] does not need to use [the kiosk] because he is visually impaired and has to have someone else to type for him." (Am. Compl., Page ID#69.)

On December 11, 2012, Wilson denied Plaintiff access to the law library. Wilson allegedly informed Plaintiff that he would not be given "any type of assistance" because he had previously filed grievances against Wilson and Sgt. Lewis. (Am. Compl., Page ID#72.) Wilson also excluded Plaintiff from the showers, prison kiosk, and recreation yard, and deliberately fed Plaintiff two hours after other prisoners, telling Plaintiff that his disabilities made him too needy.

Plaintiff's allegations are sufficient to warrant service of the amended complaint on Defendant Wilson.

**N. Officer Lindy**

As noted, *supra*, with respect to Defendant Murry, Plaintiff does not state a claim against Defendant Lindy based allegations that Lindy: (1) threatened to allow a mentally-ill prisoner read Plaintiff's mail; (2) denied Plaintiff assistance with cell cleaning on one occasion; or (3) was informed by an inmate that Plaintiff did not commit a particular misconduct.

Officer Lindy also allegedly confiscated Plaintiff's books on cassette; however, Plaintiff does not have a constitutional right to keep books on cassette or other recreational materials

in his cell. Plaintiff does not contend that he was deprived of personal property; thus, the alleged confiscation of books on cassette by Lindy does not state a § 1983 claim.

Inmate Vincent Emery asserts that Lindy denied Plaintiff an opportunity to shower on April 11 and 21, 2011, because Plaintiff had difficulty getting to the showers by himself. (Emery Aff., docket #1-1, Page ID#15.) A denial of access to showers could violate a prisoner's right to avoid unsanitary conditions of confinement. *See Rhodes*, 452 U.S. at 348 (identifying sanitation as a basic human need required by the Eighth Amendment). However, Plaintiff does not allege that he was subject to unsanitary conditions as a result of a denial of showers on isolated occasions. Indeed, the Sixth Circuit has held that a deprivation of showers for up to six days does not state a claim. *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011); *Siller v. Dean*, 2000 WL 145167, at *2 (6th Cir. Feb.1, 2000) (citing *Walker v. Mintzes*, 771 F.2d 920, 928 (6th Cir. 1985)). Consequently, Plaintiff does not state a § 1983 claim against Defendant Lindy.

### O. Sergeant Lewis

On December 9, 2012, Plaintiff allegedly requested assistance from another prisoner whom he "knew and trusted" in order to access the prison kiosk. (Am. Compl., Page ID#72.) Sgt. Lewis denied his request, insisting that Plaintiff provide his "personal account information" to two other inmates whom he did not know. (*Id.*) When Plaintiff refused, Lewis told him to "lock down" or be sent to segregation. (*Id.*) Apparently, Plaintiff was then denied access to the showers "as a means of retaliation." (*Id.*)

Plaintiff does not have a constitutional right to obtain access to the prison kiosk at every possible opportunity or in the manner of his choosing. Moreover, Plaintiff does not allege that

he was treated differently from similarly-situated prisoners.  Thus, Lewis' refusal to let Plaintiff access it on one occasion did not violate any of Plaintiff's constitutional rights.

In addition, Plaintiff's retaliation claim is wholly conclusory, as he fails to identify Lewis' role in the denial of access to the showers or any protected conduct that might have motivated it.  For the foregoing reasons, therefore, Plaintiff does not state a § 1983 claim against Lewis.

### P.  RUO Moull

Plaintiff alleges that on December 11, 2012, Defendant Moull was in charge of "conducting clean up" in Plaintiff's housing unit.  (Am. Compl., Page ID#72.)  As Moull approached Plaintiff's cell, he "informed [Plaintiff] that he would not be cleaning up because they do not accommodate disable[d] prisoners."  (Am. Compl., Page ID#72.)  Plaintiff then asked to go to the law library to purchase "legal copies" approved by the prison librarian.  (*Id.*)  Moull refused, citing Wilson's orders.  Plaintiff informed Moull that he was entitled to participate in cell cleaning and the law library under the ADA.  "As a means of retaliation," Moull denied Plaintiff recreation yard, which prevented Plaintiff from getting exercise, denied Plaintiff access to the prison kiosk, and denied Plaintiff access to the showers, which "prevented [Plaintiff] from adequately cleaning himself."  (*Id.*)

Plaintiff does not state an access-to-the-courts claim against Moull because Plaintiff does not allege any injury as a result of his inability to obtain legal copies on one occasion.  *See Lewis*, 518 U.S. at 349 (requiring actual injury to state a claim).

Plaintiff also does not state an Eighth Amendment claim against Moull because the facts alleged do not show that the denial of assistance with cell cleaning, and the denial of access

to recreation, showers, and the prison kiosk on one or more unspecified occasions subjected Plaintiff to intolerable conditions of confinement.

Finally, Plaintiff's conclusory assertion that Moull retaliated against him is not sufficient to state a First Amendment claim. Plaintiff does not identify the constitutionally-protected conduct motivating Moull's actions, or allege facts showing a plausible connection between that conduct and Moull's actions. *See Thaddeus-X*, 175 F.3d at 394. Consequently, Plaintiff does not state a § 1983 claim against Moull.

## Q. Case Manager Ault

Plaintiff asserts that Defendant Ault was "made aware" that while Plaintiff was in segregation from May 28, 2012 to July 16, 2012, he was denied reading and writing assistance and assistance with cleaning his cell, thereby subjecting him to an "unsanitized sink and t[oi]let." (Am. Compl., Page ID#68.) In addition, Ault allegedly failed to provide books on cassette to Plaintiff for discriminatory reasons and in violation of Plaintiff's "due process rights under the ADA." (*Id.*) Plaintiff asserts that non-visually-impaired prisoners were allowed to "read books, catalogs, and magazines." (*Id.*) Plaintiff also asserts in the context of his allegations against Ault that he was "denied yard for over 30 consecutive days." (*Id.*)

The foregoing allegations are not sufficient to state an Eighth Amendment claim against Ault. The failure to provide reading and writing assistance or books on cassette does not implicate Plaintiff's Eighth Amendment rights. Moreover, while unsanitary conditions of confinement may rise to the level of an Eighth Amendment violation in some circumstances, Plaintiff's bare assertion that his sink and toilet were unsanitized, without more, falls short of showing that he was subject to inhumane or intolerable conditions of confinement.

With respect to the denial of yard privileges, Plaintiff does not allege that Ault was aware of, or responsible for, that condition. Moreover, the Sixth Circuit has not set a minimum amount of outdoor recreation time required to avoid violating the Eighth Amendment's objective component. *See Rodgers v. Jabe*, 43 F.3d 1082, 1086 (6th Cir. 1995). Instead, it has held that a "'a total or near-total deprivation of exercise or recreational opportunity, without penological justification,'" impinges on an inmate's Eighth Amendment right, because "'[i]nmates require regular exercise to maintain reasonably good physical and psychological health.'" *Id.* (quoting *Patterson v. Mintzes*, 717 F.2d 284, 289 (6th Cir. 1983)); *see also Rahman X. v. Morgan*, 300 F.3d 970, 974 (8th Cir. 2002) (holding that the inability to go outside for three months was not a constitutional violation). Plaintiff does not claim he was denied all opportunity for recreation or other physical activity sufficient to maintain reasonably good health. Rather, Plaintiff claims that he was not permitted to participate in outdoor exercise for a little more than a month. Without greater specificity, Plaintiff has failed to state a plausible constitutional violation. *Cf. Rodgers*, 43 F.3d at 1087 (holding that prison officials were entitled to qualified immunity for denying the plaintiff out-of-cell exercise for at least one hour per day, five days a week, in a thirty day period).

To the extent Plaintiff intends to assert a due-process claim against Ault,[3] Plaintiff presumably does not assert a denial of his right to *procedural* due process, as he does not contend that he was deprived of a liberty or property interest without necessary procedures. Instead, he appears to invoke a right akin to *substantive* due process. The Supreme Court, however, has held that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more

---

[3]Contrary to Plaintiff's assertion in his complaint, the right to due process stems from the Constitution, not the ADA.

generalized notion of "substantive due process," must be the guide for analyzing these claims.'"

*Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Here, Plaintiff challenges the conditions of his confinement. The source of constitutional protection against "intolerable" conditions of confinement is found in the Eighth Amendment. *See Rhodes*, 452 U.S. at 348. Thus, the Eighth Amendment, not the generalized notion of substantive due process, must be the guide to analyzing Plaintiff's claims. As indicated, however, Plaintiff's allegations do not satisfy the requirements of an Eighth Amendment claim.

Plaintiff also asserts that Ault discriminated against him. The Equal Protection Clause of the Constitution prohibits discrimination by government officials which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference. *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005). Plaintiff's allegations arguably implicate the third type of equal protection claim, alleging that visually-impaired prisoners are treated differently than similarly-situated prisoners who are not visually impaired. Plaintiff's equal protection claim must fail, however, because non-visually-impaired prisoners clearly are not similarly situated to Plaintiff with respect to the use of reading materials. By his own admission, Plaintiff cannot use reading materials without assistance; thus, a difference in treatment between Plaintiff and other prisoners with respect to the provision of those materials does not violate the Equal Protection Clause. Plaintiff complains that he was not provided books on cassette, but he does not allege that prison officials deprived him of books on cassette while providing them to other, similarly-situated prisoners. Thus, for the foregoing reasons, Plaintiff does not state an equal protection claim, or any other type of claim under § 1983, against Defendant Ault.

### R. Officer Hair

Defendant Hair is named as a Defendant in this action but he does not appear in any of the allegations in the body of the complaint. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where, as here, a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). Consequently, Defendant Hair must be dismissed for failure to state a claim.

### II. ADA

Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (citing 42 U.S.C. § 12132). In order to state a claim under Title II of the ADA, Plaintiff must show: (1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disability. *See Tucker v. Tennessee*, 539 F.3d 526,

532-33 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003). The term "qualified individual with a disability" includes "an individual with a disability who, with or without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs). The proper defendant under a Title II claim is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002). Plaintiff has named the MDOC as a Defendant and two MDOC officials in their official capacities: Defendants Heyns and Prelesnik.

The State of Michigan (acting through the MDOC) is not necessarily immune from Plaintiff's claims under the ADA. The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 151, 159 (2006). If conduct violates the ADA but not the Fourteenth Amendment, then the Court must determine whether the ADA validly abrogates state sovereign immunity. *Id.* At this stage of the proceedings, the Court will presume that the ADA validly abrogates state sovereign immunity for Plaintiff's ADA claims. Upon review, therefore, the Court concludes that Plaintiff's allegations are sufficient to warrant service of Plaintiff's ADA claims on Defendants MDOC, Heyns, and Prelesnik.

As for the other Defendants, Plaintiff expressly sues them in their individual capacities only. Title II of the ADA does not provide for suit against a public official acting in his or her individual capacity. *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009). Thus, the Court will dismiss Plaintiff's ADA claims against all Defendants other than the MDOC, Heyns, and Prelesnik.

### III. Rehabilitation Act

The Rehabilitation Act (RA) provides that a qualified individual with a disability may not be excluded from participation in, denied the benefits of, or subjected to discrimination "any program or activity receiving Federal financial assistance," "solely by reason of his or her disability." 29 U.S.C. § 794(a). The analysis of claims under the RA is roughly parallel to the analysis under the ADA. *McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (en banc). "The ADA and the Rehabilitation Act both prohibit discrimination against the disabled—but the Rehabilitation Act, unlike the ADA, expressly prohibits discrimination *solely* on the basis of disability." *Lee v. City of Columbus*, 636 F.3d 245, 250 (6th Cir. 2011).

States waive sovereign immunity from claims under the RA when they accept certain federal funds. *Carten v. Kent State Univ.*, 282 F.3d 391, 398 (6th Cir. 2002). The Court will presume, at this stage in the proceedings, that the State of Michigan receives federal funds for the operation of its prisons, including ICF, and that it is not immune from Plaintiff's claims under the RA.

Like the ADA, however, the RA does not impose liability on individuals. *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004); *see also A.W. v. Jersey City Public Schools*, 486 F.3d 791, 804 (3d Cir. 2007) ("Suits may be brought pursuant to [the Rehabilitation

Act] against recipients of federal assistance, but not against individuals."). Consequently, will allow Plaintiff's RA claims to proceed only as to the MDOC and Defendants Heyns and Prelesnik in their official capacities. Plaintiff's RA claims against the other Defendants will be dismissed.

## Conclusion

After review of the amended complaint as required by the Prison Litigation Reform Act, the Court determines that the following Defendants will be dismissed for failure to state a claim and/or on grounds of immunity: Norwood, Huss, Stoddard, Gilkey, Murry, Czop, Smith, Jackson, Lindy, Lewis, Moull, Ault, and Hair. Furthermore, Plaintiff's claims under § 1983 against Defendants MDOC, Heyns, and Prelesnik, and his individual-capacity claims against them under the ADA and the RA, will be dismissed for failure to state a claim and/or on grounds of immunity. The Court will allow service of Plaintiff's amended complaint upon the following Defendants, solely with respect to Plaintiff's claims under § 1983: Defendants LeBarre, Foi, Shoard, Lahr, Kaber, and Wilson. The Court will also allow service of Plaintiff's amended complaint upon Defendants MDOC, Heyns, and Prelesnik, solely with respect to Plaintiff's official-capacity claims under the ADA and the RA.

An Order consistent with this Opinion will be entered.


Dated:  March 6, 2013                    /s/ Janet T. Neff
                                         Janet T. Neff
                                         United States District Judge