UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DAVID BROWN,

        Plaintiff,                                Hon. Janet T. Neff

v.                                                             Case No. 1:12 CV 873

JOHN PRELESNIK, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment. (Dkt. #118). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted in part and denied in part**.


## BACKGROUND

The following general allegations are contained in Plaintiff's amended complaint. (Dkt. #15). Plaintiff is blind in his left eye and partially blind in his right eye due to keratoconus, a degenerative eye condition. On March 20, 2012, Plaintiff was transferred to the Ionia Correctional Facility (ICF). As of this date, Plaintiff was afforded various special accommodations many of which ICF was unable to satisfy. Because the facility was not properly equipped to house visually impaired prisoners, Plaintiff twice fell injuring his neck and lower back. Plaintiff was denied school/work assignments and was also excluded from the gym program solely because of his disability. Plaintiff asserted various claims against numerous defendants. Most of Plaintiff's claims were dismissed on

screening by the Honorable Janet T. Neff. (Dkt. #12-13). Specifically remaining in this action are: (1) Plaintiff's § 1983 claims against Defendants LeBarre, Foi, Shoard, Lahr, Kaber, and Wilson; and (2) Plaintiff's official capacity claims under the Americans with Disabilities Act (ADA) and Rehabilitation Act (RA) against Defendants Michigan Department of Corrections, Heyns, and Prelesnik. The remaining Defendants now move for summary judgment. Plaintiff indicates that he is unable to respond to the present motion because he has been unable to obtain the necessary assistance from prison officials. (Dkt. #134).

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing

*Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim

for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same)). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

**I.**     **Americans with Disabilities Act (ADA) and Rehabilitation Act (RA) Claims**

Plaintiff alleges that ICF lacks the ability to properly house visually impaired prisoners. Specifically, Plaintiff alleges that ICF lacks: (1) ramps; (2) barrier-free housing; (3) handicap accessible showers; and (4) reading/writing assistance. (Dkt. #15 at ¶¶ 28-29, 37). Plaintiff alleges that he was denied "school/work assignments based solely on his disability." (Dkt. #15 at ¶ 31). Plaintiff also alleges that he was denied recreation opportunities because of his disability. (Dkt. #15 at ¶¶ 40-41). Plaintiff asserts that these actions violate his rights under the Americans with Disabilities Act and the Rehabilitation Act. These claims are asserted against the Michigan Department of Corrections and Defendants Heyns and Prelesnik in their official capacity.

Title II of the ADA provides, in pertinent part, that "no qualified individual with a disability shall, because of that disability, 'be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (quoting 42 U.S.C. § 12132). To state a claim under Title II of the ADA, Plaintiff must establish: (1) he is a qualified person with a disability; (2) defendants are subject to the ADA; and (3) he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of his disability. *See Tucker v. Tennessee*, 539 F.3d 526, 532-33 (6th Cir. 2008). Title II of the ADA applies to state prisons and inmates. *See Mingus*, 591 F.3d at 482.

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States. . .shall, solely by reason of her or his disability, ... be subjected to discrimination under any program or activity receiving Federal financial assistance. . .." 29 U.S.C. § 794(a). Claims asserted under the Rehabilitation Act are analyzed similarly to claims asserted under the ADA. *See Lee v. City of Columbus*, 636 F.3d 245, 250 (6th Cir. 2011); *McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir.1997) (en banc) ("[t]he analysis of claims under the [ADA] roughly parallels those brought under the Rehabilitation Act"). While both provisions prohibit discrimination against the disabled, the Rehabilitation Act, unlike the ADA, expressly prohibits discrimination *solely* on the basis of disability. *See Lee*, 636 F.3d at 250.

In support of their motion for summary judgment, Defendants have submitted several items of evidence, none of which suffice for Defendants to carry their burden. First, Defendants have submitted a copy of an Order indicating that Plaintiff was transferred to ICF on March 20, 2012, "based on the inability to be managed in a GP [General Population] level IV setting." (Dkt. #119, Exhibit A).

The relevance of this evidence is not clear as Defendants have presented neither argument nor evidence that Plaintiff's security level or alleged management difficulties impacts these particular claims. Defendants have submitted information indicating that Plaintiff is presently serving a life sentence following his conviction for first degree murder. (Dkt. #119, Exhibit B). The relevance of this evidence likewise is not clear.

Defendants have also submitted an affidavit executed by Ray Wilson. (Dkt. #119, Exhibit C). With respect to Plaintiff's ADA and RA claims, Wilson asserts that "per facility rules, all prisoners were only allowed to use the kiosks for 45 minutes per week, not 75 minutes." This assertion fails to advance Defendants' position, however. In his verified amended complaint, Plaintiff asserts that Wilson allowed non-disabled prisoners to use the kiosks for 30 minutes longer each week. (Dkt. #15 at ¶¶ 115-18). Thus, submission of Wilson's affidavit accomplishes nothing more than indicate the presence of a factual dispute precluding Defendants' motion for relief.

Finally, Defendants have referenced a previously filed affidavit submitted by Philip Shroad. (Dkt. #87, Exhibit A). With respect to Plaintiff's allegations regarding his ability to safely use the showers, Shroad asserts the following:

> Plaintiff was never forced to shower with other inmates as the Plaintiff never requested alone shower time. Time could have been arranged for the Plaintiff to shower by himself if he had requested. Furthermore, handicap chairs are available at ICF.

(Dkt. #87, Exhibit A).

With respect to Plaintiff's allegations regarding his inability to navigate through the facility, Shroad asserts the following:

> The allegation that the Plaintiff was given only 'porters' to assist him is also denied. The assistants assigned specifically to Plaintiff are not merely porters; they are identified as Disabled Prisoner Assistants. .

>   .Plaintiff was provided with a detailed assistant who is paid a skilled wage to work with Plaintiff every day. The assigned assistant is tasked with escorting Plaintiff for all out-of-cell movement which includes unit yard, stairs, shower, kiosks, counselor's office, and unit dayroom for reading and writing assistance. The assistant also escorts Plaintiff to out-of-unit locations, specifically to health care and law library. Obtaining a detailed assistant was to ensure that Plaintiff had assistance for daily living and so that Plaintiff would be escorted to the law library where there are inmate legal writers/assistants and staff. While the Plaintiff was housed in Unit 4 of ICF, I provided each detailed assistant under my supervision assigned to the Plaintiff with instructions as to what their job responsibilities entailed. Furthermore, each detailed assistant who has been assigned to Plaintiff received instructions from unit staff as to what their job responsibilities entailed.

(Dkt. #87, Exhibit A).

Regarding the shower issue, Plaintiff has submitted evidence that the showers are not handicap accessible. (Dkt. #15 at ¶¶ 48-49, 64, 76, 88; Dkt. #15 at Page ID#133, 138-39). As for Shroad's assertion that "handicap chairs are available," Defendants have failed to present evidence that Plaintiff was aware that such accommodation existed. Considering the evidence that Plaintiff experienced difficulty - and even injury - when attempting to utilize a non-handicap accessible shower, it seems unlikely that Plaintiff would not have requested a "handicap chair" were one available. Thus, as regards the shower issue, the Court finds that Defendants have failed to meet their burden and, therefore, are not entitled to relief. As for Plaintiff's claim regarding his inability to navigate through the facility the result is the same. Plaintiff has submitted evidence directly contradicting the assertions in Shroad's affidavit. Shroad's affidavit simply underscores the presence of a factual dispute precluding Defendants' motion for relief. In sum, for the reasons articulated above, the undersigned recommends that Defendants' motion for summary judgment as to Plaintiff's ADA and RA claims be denied.

**II.         Section 1983 Claims**

As previously noted, Plaintiff has § 1983 claims remaining against Defendants LeBarre, Foi, Shoard, Lahr, Kaber, and Wilson. Because these claims arise out of different incidents, the claims against each Defendant will be addressed separately.

        A.        Defendant LeBarre

Plaintiff alleges that Defendant LeBarre failed to provide him appropriate medical treatment in violation of his Eighth Amendment rights. Specifically, Plaintiff alleges the following. On October 17, 2012, Plaintiff was examined by an "off-site eye specialist." (Dkt. #15 at ¶ 162). Plaintiff apparently received contact lenses during this visit which he was instructed to wear "for 30 days until his next appointment." (Dkt. #15 at ¶ 163). Plaintiff was also instructed that "if he should suffer from any pain or discomfort to remove them and contact healthcare immediately." (Dkt. #15 at ¶ 163). On an unspecified date, Plaintiff informed Defendant LeBarre that his contact lenses were "too tight and caused discomfort." (Dkt. #15 at ¶ 164). Plaintiff complained to LeBarre that he should have been scheduled to return to the eye specialist within 30 days of his October 17, 2012 appointment. (Dkt. #15 at ¶ 165). Plaintiff blames LeBarre for the failure to properly schedule this follow-up appointment. (Dkt. #15 at ¶ 165).

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate

indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001). The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). If the objective test is met, the Court must then determine whether the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847).

To the extent, however, that the plaintiff simply disagrees with the treatment he received, or asserts that he received negligent care, the defendant is entitled to summary judgment. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment);

*Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment"); *Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir., Nov. 3, 2009) ("mere negligence or malpractice is insufficient to establish an Eighth Amendment violation").

In support of her motion for summary judgment, Defendant LeBarre submitted an affidavit in which she asserts, in relevant part, the following:

> Plaintiff alleges that he was given specialized contact lenses in October, 2012, and was told to wear them for 30 days until his next appointment. Plaintiff alleges that I was responsible for him not receiving the follow up appointment within the 30 days. Plaintiff was seen in the Duane Waters Hospital ("DWH") eye clinic on October 4, 2012 and October 18, 2012. Plaintiff was scheduled for a follow up exam on November 15, 2012, but there was a transportation issue at Ionia and Plaintiff was not picked up for the appointment. Ionia medical staff requested to reschedule the appointment with DWH, and were given a date of January 31, 2013 by staff at DWH Optometry. Plaintiff was seen on January 31, 2013, and the follow up was completed. There is no indication from the medical records that a delay in the appointment date had any negative impact on Plaintiff's treatment or condition.

(Dkt. #119, Exhibit D).

This evidence reveals that the impediment which delayed Plaintiff's follow-up eye examination was not the result of a deliberate indifference by Defendant LeBarre to Plaintiff's vision impairment, but was instead the result of administrative and logistical matters beyond LeBarre's control. There is no evidence that Defendant LeBarre's actions were unreasonable or subjected Plaintiff to the risk of medical harm. Nor is there evidence that Plaintiff suffered any harm as a result of the delay in question. *See, e.g., Blackmore v. Kalamazoo County*, 390 F.3d 890, 897 (6th Cir. 2004) (where the need for treatment is not obvious, the plaintiff, to sustain a deliberate indifference claim, must submit "medical evidence" demonstrating that the delay or denial of treatment "resulted in additional injury").

Plaintiff has likewise failed to present evidence contrary to LeBarre's affidavit. Accordingly, the undersigned recommends that Defendant LeBarre's motion for summary judgment be granted.

B.   Defendants Foy and Shoard

Plaintiff alleges that after submitting a grievance regarding "his right to employment under the ADA," Defendants Foy and Shoard conspired to retaliate against him by assigning him to a prison job cleaning showers which "posed a threat of safety concern to a visually impaired prisoner." (Dkt. #15 at ¶¶ 73-76). Judge Neff found on a screening that these claims were not subject to dismissal. Neither Defendant Foy nor Defendant Shoard have asserted any argument in the present motion that they are entitled to relief. The undersigned, therefore, recommends that Defendant Foy's and Defendant Shoard's motions for summary judgment be denied.

C.   Defendant Lahr

Plaintiff alleges that Defendant Lahr subjected him to multiple instances of unlawful retaliation. Specifically, Plaintiff alleges the following. On an unspecified date in October 2010, Lahr refused to allow Plaintiff to attend the chow hall, stating to Plaintiff "you can eat in your cell with your blind ass." (Dkt. #15 at ¶¶ 98-99). When Plaintiff responded that "he was going to grieve the issue," Lahr retaliated against Plaintiff by placing him in segregation. (Dkt. #15 at ¶¶ 99-101). After Plaintiff was released from segregation, Defendant Lahr stated to Plaintiff, "I don't want your blind grievance writing ass around me." (Dkt. #15 at ¶ 102). Lahr then "sent [Plaintiff] back to segregation." (Dkt. #15 at ¶ 102). This occurred in October 2010. (Dkt. #15 at ¶ 102). Following his release from this subsequent assignment to segregation, Defendant Lahr stated to Plaintiff, "am I going to have to kick

your blind fucking face in bitch, I told you I don't want you around me." (Dkt. #15 at ¶ 103). Plaintiff responded by attempting to appease Lahr. (Dkt. #15 at ¶¶ 104-09). Plaintiff was nevertheless sent back to segregation by Defendant Lahr in "approximately" November 2010. (Dkt. #15 at ¶¶ 110-11). Plaintiff alleges that Defendant Lahr sent him to segregation "three times within approximately a 60 day period" for improper retaliatory purposes. (Dkt. #15 at ¶¶ 111).

The elements of a First Amendment retaliation claim are well known: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)). Defendant Lahr asserts that he is entitled to summary judgment on the following ground:

> Defendant Lahr wrote two major misconduct tickets against Plaintiff on October 22, 2010, and November 8, 2010. Both misconducts were for threatening behavior, and Plaintiff was found guilty of both misconducts in a subsequent hearing. There is no evidence that Plaintiff had either misconduct ticket successfully overturned. Therefore, Plaintiff is checkmated from raising a retaliation claim based upon these misconduct tickets.

(Dkt. #119 at Page ID# 737-38).

As Defendant correctly notes, the Sixth Circuit has held that where an inmate alleges that a prison official falsely charged him with a misconduct violation for retaliatory purposes, the prison official is entitled to relief if the prisoner was found guilty of the misconduct violation. *See, e.g., Jackson v. Madery*, 158 Fed. Appx. 656, 662 (6th Cir., Nov. 17, 2005) ("[a] finding of guilt based upon

some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim'"). Nevertheless, the Court is unpersuaded by Defendant Lahr's argument.

Defendant has submitted evidence that on October 22, 2010, and again on November 8, 2010, he charged Plaintiff with misconduct violations for threatening behavior. (Dkt. #119, Exhibits G-H). Plaintiff was found guilty of both charges. (Dkt. #119, Exhibits G-H). However, Defendant has presented no evidence that the incidents giving rise to Plaintiff's retaliation claims correspond to the misconduct convictions cited by Defendant.[1] Moreover, Plaintiff alleges that Defendant Lahr sent him to segregation for improper retaliatory purposes on three separate occasions whereas Defendant Lahr has submitted evidence which, at best, accounts for two of the incidents in question. In sum, Defendant Lahr has failed to establish the absence of a genuine issue of material fact regarding these claims. Accordingly, the undersigned recommends that Defendant Lahr's motion for summary judgment be denied.

D.   Defendant Kaber

Plaintiff alleges that on March 20, 2012, Defendant Kaber refused to deliver cassette tapes that were mailed to Plaintiff from a government program which provides talking books to visually impaired persons. (Dkt. #15 at ¶¶ 112-14). Plaintiff alleges that Defendant's actions violated his constitutional right to receive mail. Defendant Kaber argues that she is entitled to relief based upon documentation concerning an incident that occurred on August 21, 2012, five months after the events giving rise to this particular claim. (Dkt. #119, Exhibit E).

---

[1] While Defendant can rightly lament the lack of specificity in Plaintiff's allegations concerning these claims, such does not relieve Defendant of the obligation, in the context of a motion for summary judgment, to establish the absence of a genuine factual dispute. Defendant could have moved under Federal Rule of Civil Procedure 12(e) to require Plaintiff to submit a more definite statement of his claims. Defendant, however, chose not to do so.

According to this evidence, Officer Hammond, on August 21, 2012, rejected a mailing of 17 cassettes Plaintiff received on the ground that Plaintiff already possessed 24 cassettes, the maximum number allowed under MDOC policy. Defendant Kaber argues that because the policy prohibiting prisoners from possessing more than 24 cassette tapes serves a legitimate penological purpose, she is entitled to summary judgment. Even if the Court assumes the legitimacy of this policy, the Court fails to discern how such advances Defendant Kaber's position. Plaintiff alleges that Defendant Kaber deprived him of certain mail on March 20, 2012. Whether a mail rejection decision made by a different officer several months later was proper is irrelevant with respect to the claim asserted against Defendant Kaber. With respect to Plaintiff's claim against Defendant Kaber, Defendant has failed to present any evidence that would entitle her to relief. Accordingly, the undersigned recommends that Defendant Kaber's motion for summary judgment be denied.

### E. Defendant Wilson

In his amended complaint, Plaintiff makes allegations against Defendant Wilson in two separate Counts. In Count 12, Plaintiff alleges that on four occasions between November 7, 2012, and December 8, 2012, Defendant Wilson denied him use of the shower and limited his use of a prison kiosk. (Dkt. #15 at ¶¶ 115-18). Plaintiff alleges that on December 3, 2012, and December 4, 2012, Defendant Wilson denied him access to the chow hall. (Dkt. #15 at ¶¶ 119). In Count 16, Plaintiff alleges that on December 11, 2012, Wilson refused Plaintiff "access to the law library for the purpose of purchasing legal copies." (Dkt. #15 at ¶ 152). Plaintiff alleges that Defendant Wilson's conduct was motivated by unlawful retaliatory motives. (Dkt. #115 at ¶ 153).

1.     Count 12

It is not clear whether Plaintiff is alleging these actions were undertaken for unlawful retaliatory purposes or whether such violate his Eighth Amendment right to be free from cruel or unusual punishment. Regardless of the interpretation, however, Defendant Wilson is entitled to relief.

To prevail on a claim of unlawful retaliation, Plaintiff must establish the following elements: (1) Plaintiff was engaged in constitutionally protected conduct, (2) Plaintiff suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct, and (3) there exists a causal connection between the protected conduct and the adverse action - in other words, the adverse action was motivated at least in part by Plaintiff's protected conduct. *See Eby*, 481 F.3d at 440. The allegations in Count 12 fail to assert more than a de minimis injury insufficient to maintain a claim of retaliation. *See Miller v. Berghuis*, 2014 WL 1909348 at *5 (W.D. Mich., May 13, 2014); *see also, Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) ("certain threats or deprivations are so de minimis that they do not rise to the level of being constitutional violations"); *Markham v. Mote*, 2013 WL 791240 at *4 (W.D. Mich., Mar. 4, 2013) (same).

To the extent that the allegations in question are interpreted as asserting a conditions of confinement claim under the Eighth Amendment, the result is the same. To prevail on such a claim, Plaintiff must show that the conditions of his confinement violate contemporary standards of decency. *See Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004) (citing *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). Contemporary standards of decency are violated only by "extreme deprivations" which deprive the prisoner of the "minimal civilized measure of life's necessities." *Hadix*, 367 F.3d at 525 (quoting *Hudson v. McMillan*, 503 U.S. 1, 9 (1992)). The alleged deprivations alluded to in Count 12 of Plaintiff's amended complaint fall far short of this standard. Accordingly, to the extent the allegations

in Count 12 are interpreted as asserting claims under the Eighth Amendment, the undersigned recommends that Defendant Wilson is entitled to relief.

### 2. Count 16

Plaintiff alleges that Defendant Wilson, on a single occasion, denied Plaintiff the ability to make copies. As previously noted, to sustain a retaliation claim, the alleged adverse action must result in more than a de minimis injury. The Court finds that denying a prisoner, on a single occasion, the opportunity to make copies, where there is no allegation that such deprivation resulted in other harm or prejudice, simply fails to rise above the level of de minimis injury. Accordingly, the undersigned recommends that Defendant Wilson's motion for summary judgment be granted as to this claim.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (Dkt. #118), be **granted in part and denied in part**. Specifically, the undersigned recommends that Defendants LeBarre and Wilson are entitled to summary judgment, but that otherwise Defendant's motion be denied and Plaintiff's remaining claims go forward.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,

Date: September 21, 2015

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge